JAMES BILLINGS v. GERMAN INS. CO.

[FILED MAY 18, 1892.]

1. **Insurance:** TECHNICAL DEFENSES NOT FAVORED. A contract of insurance, where the insurer has received and retains the consideration, is to be sustained, if possible, and should not be defeated upon any ground which does not materially increase the risk.

2. ———: MORTGAGE OF PREMISES: RELEASE. Where the mortgagor assigned a policy of insurance to the mortgagee as part security for the mortgage debt, upon the satisfaction of the mortgage he becomes subrogated to the rights of the mortgagee in the policy and may maintain an action therefor for a loss.

3. ———: WAIVER. A forfeiture in a policy of insurance may be waived where the insurer is informed of the facts out of which a forfeiture is claimed, but thereafter continues to treat the contract as binding, and induces the insured to act in that belief.

ERROR to the district court for Richardson county. Tried below before BROADY, J.

*E. W. Thomas*, and *C. Gillespie*, for plaintiff in error:

Having paid the mortgage Billings had the right to sue on the policy. (*Ins. Co. v. Davenport*, 37 Mich., 613; *Hatch v. Ins. Co.*, 13 Rep. [Colo.], 293; *Coates v. Ins. Co.*, 58 Md., 172; Art. 18, Am. L. Reg., 737; *V. F. & M. Ins. Co. v. Feagin*, 9 Rep. [Ga], 173.) On the question of waiver: *Butz v. Ins. Co.*, 76 Mich., 263; *Phœnix Ins. Co.*

*v. Barnd*, 16 Neb., 90; *Oshkosh G. L. Co. v. Ins. Co.*, 71 Wis., 454; *Titus v. Ins. Co.*, 81 N. Y., 410; *Ins. Co. v. Norton*, 96 U. S., 234; *Ins. Co. v. Kittle*, 39 Mich., 54; *Brink v. Ins. Co.*, 80 N. Y., 108; *Prentice v. Ins. Co.* 77, Id., 483; *Oakes v. Ins. Co.*, 135 Mass., 248; *Ins. Co. v. Etherton*, 25 Neb., 506; *Young v. Ins. Co.*, 45 Ia., 378; *Ins. Co. v. Kranich*, 36 Mich., 289.

*Frank Martin, contra*, cited, on the question of waiver: *Cook v. Ins. Co.*, 47 N. W. Rep. [Mich.], 568; *Ins. Co. v. Mowry*, 96 U. S., 544; *Cleaver v. Ins. Co.*, 32 N. W. Rep. [Mich.], 660; *Golden v. Ins. Co.*, 49 N. W. Rep. [Minn.], 246; *German Ins. Co. v. Heiduk*, 30 Neb., 288; *Guernsey v. Ins. Co.*, 17 Minn., 105; *Richards v. Ins. Co.*, 47 N. W. Rep. [——], 351; *McFarland v. Ins. Co.*, 49 N. W. Rep. [Minn.], 254; *Diehel v. Ins. Co.*, 58 Pa. St., 443; *Devens v. Ins. Co.*, 83 N. Y., 168; *Graham v. Ins. Co.*, 9 Daly [N. Y.], 341; *Titus v. Ins. Co.*, 81 N. Y., 411; *Ins. Co. v. Cooper*, 60 Ill., 510; *Hale v. Ins. Co.*, 6 Gray [Mass.], 169.

MAXWELL, CH., J.

This is an action upon a policy of insurance against loss by fire. The property insured was a frame barn situated on the plaintiff's farm in Richardson county. The policy was issued April 12, 1886, for five years, and the barn was destroyed by fire September 14, 1889.

The defendant filed an amended answer, in which it admits that it received the premium and issued the policy as alleged, but it avers that after said policy was delivered it became void for two reasons:

First—Because on July 20, 1888, a suit was commenced in the district court of said county of Richardson by the Equitable Trust Company, of Omaha, against James Billings, to foreclose a mortgage upon the property insured, and a decree of foreclosure was entered in that suit.

It is not alleged, however, that the property was sold under decree.

Second—Because after the execution and delivery of the policy, to-wit, on April 10, 1888, the plaintiff made a mortgage on the property insured to the First National Bank of Falls City, in the sum of $1.893.60.

It was further alleged that, at the time of the fire, the barn was vacant and unoccupied, but there was no evidence to sustain that allegation.

In the reply the plaintiff admits that a suit to foreclose a mortgage on the premises insured was commenced as alleged in the amended answer, but he avers that said mortgage was the same mortgage mentioned in the policy of insurance, to the holder of which the loss, if any should occur, was by the terms of the policy made payable. It is further alleged in the reply that plaintiff had paid the said mortgage after the foreclosure suit was commenced and that he was therefore the owner of the policy and entitled to bring suit thereon.

It is also averred that the mortgage existed before the making of the policy, as defendant well knew.

As to the mortgage for $1,893.60, given by plaintiff to the First National Bank, the reply alleges that that mortgage was made with the knowledge and consent of defendant; that after the loss by fire, the defendant, with full knowledge of the facts, and of the existence of said mortgage, waived the right to insist on a forfeiture therefor by urging and inducing plaintiff, at considerable trouble and expense to him, to prepare and forward to the company proofs of his loss, and to incur other expense and trouble, thereby leading plaintiff to believe that its objection to paying the loss was based on entirely different grounds, and not on the ground that such mortgage had been made.

After the fire the defendant, with knowledge of the alleged ground of forfeiture, entered into negotiation with plaintiff for settlement.

The provision of the policy referred to in defendant's amended answer which it is claimed was violated by plaintiff so as to render the policy void, is numbered "V" in printed part of the policy. The material part of that section is as follows: "When property insured by this policy, or any part thereof, shall be alienated or incumbered, * * * without the consent of the company indorsed thereon, * * * or if a suit be commenced to foreclose a mortgage on the property insured, * * * this policy shall at once cease to be binding."

Upon the trial of the case, after all the evidence had been introduced and instructions in writing had been requested by the plaintiff's attorneys, the court refused to give any of said instructions, but at the request of defendant instructed the jury as follows: "The jury are instructed that under the pleadings, proofs, and law in this case your verdict must be for the defendant." The jury having found for defendant as instructed by the court, and a motion for a new trial having been overruled, judgment was entered on the verdict.

The testimony shows that immediately after the fire the local agent at Falls City was notified of the loss, and he notified his company. The company thereupon sent the following letter to him:

"FREEPORT, ILL., Oct. 5, 1889.

" C. C. Paxton, Esq., Falls City, Neb.—DEAR SIR: We have yours of the 30th ult., and with reference to the matter of reported loss of Billings, Pol. No. 214, would say that the same has been referred to State Agent Wash, who will give it his early attention.

" Yours truly,          WM. TREMBER, Sec."

Afterwards he received from the state agent the following letter:

"SIOUX CITY, Oct. 21, 1889.

" C. C. Paxton, Agent, Falls City, Neb.—DEAR SIR: I am in receipt of yours of the 30th inst. to the company

concerning the loss of James Billings under policy No. 213, and referring thereto will say we are as anxious to have it adjusted as you are, and will reach you as soon as possible, hope some time next week.   If not then, as soon as possible thereafter.

"Please explain to claimant that we have only one man in the state of Nebraska on losses and he has taken care of 279 up to Sept. 1st and God knows how many on hand since.        Yours truly,        JAMES R. WASH."

The plaintiff also received from the state agent the following letters:

"LINCOLN, NEB., Jan. 5, 1890.

*Mr. James Billings, Salem, Neb.*—DEAR SIR: I am in receipt of letter under date of Dec. 30, from one E. W. Thomas, of Falls City, Neb., written at your request concerning my letter to you of Dec. 23 last, in regard to the pretended proofs sent by you to the company in your claim under policy No. 214, Falls City agency.   In reply to this last letter written, wherein it is stated that you have 'done your best' to comply with the conditions of said policy as to proofs, and intimating that you do not clearly understand what more is desired from you, will say that my letter of said date was clearly definite, but that you may more fully understand me, I will first ask for mortgages on the premises at the time of the alleged fire, giving from whom and to whom, date and amount of same, giving the description of the land named in them.   When this is received will indicate the next wanted.

"Truly,        JAMES R. WASH, *St. A.*"

"LINCOLN, NEB., Dec. 23, 1889.

"*James Billings, Salem Neb.*—DEAR SIR: Referring to your letter of December 18, 1889, concerning your loss claim under policy No. 214 will say, that this letter directed to the Co., also your letter of a former date to the Co., inclosing them your pretended proof of loss under said policy, have this day reached me, and upon examina-

tion I find that the pretended proof don't comply with the conditions of the policy held by you, and will ask you to furnish additional proof in compliance therewith. The conditions in your policy referring to proofs in case of loss, as therein shown, says the assured shall forthwith give notice in writing to the Co., and within sixty days from the date of such fire shall deliver as particular an account of his loss and damage as the nature of the case will admit, etc. The assured shall furnish full plans and detailed specifications, to be sworn to by assured, of the building or buildings damaged or destroyed as is possible to be made. Give size, age, kind, and condition at the time of the fire, in whom the title, and amount of incumbrance at the time of fire.

"When such additional proofs are received I will be better able to investigate your claim.

"Yours truly,        JAMES R. WASH, St. A.

"Please state the number of mortgages and amount and date of each, and amount due thereon at the time of fire.

"Truly,            JAMES R. WASH, St. A."

The testimony also shows that the plaintiff, by reason of the objections to the proofs of loss, had such proofs formally prepared by an attorney at an expense of eight or ten dollars and sent them to the company. The testimony also shows that Mr. Wash went to the residence of the plaintiff to adjust the loss. It is true he informed him that by reason of the execution of the mortgage to the Falls City bank he had forfeited the policy, but he intimated they would not insist on a forfeiture. He certainly did not then insist on such forfeiture. His object seemed to be to effect a compromise, a reduction in the amount of the claim.

The plaintiff testifies that he offered him $740 if he would settle without seeing a lawyer. This Wash denies. Whatever the facts as to such proposition may be, we think sufficient is shown to justify the jury in finding a waiver of obscure conditions in the policy. The fact that a decree

of foreclosure of the first mortgage had been obtained did not affect the validity of the policy, the policy, with the assent of the defendant, was assigned to the first mortgagee. This assignment was not for ornament merely but as security in part for the mortgage debt.

If on bringing suit and obtaining a decree of foreclosure and sale the insurance lapsed, the policy, instead of being additional security, would be a positive injury both to the mortgagee and the mortgagor, because if the mortgagor's insurance was gone, then in case of loss his means of payment would thereby be diminished, and thus the mortgagee be liable to be compelled to bring suit to foreclose the mortgage.

A contract of insurance is presumed to be made in good faith. It is not to be hedged about with numberless conditions printed in small and unreadable type to enable the company, upon slight and trivial pretexts, which do not substantially affect the risk, to evade payment of a loss. Its contract is to pay in case of loss, and whenever by changes and transfers the risk has not been increased it should be required to perform; otherwise a policy is a mere delusion, and the party insured finds that he has paid for indemnity and the company retains the considerations, yet it will not perform.

The general rule as to contracts certainly prevails that the contract is to be sustained rather than be held to be invalid; and this particularly is true where the party which refuses to perform retains the consideration. It is very clear that the bringing of suit on the first mortgage, or even a sale under the decree, would not affect the policy.

Second—The plaintiff having satisfied the first mortgage was thereby subrogated to the rights of the mortgagee in the policy and may maintain the action. The question is discussed in a valuable article in 18 Am. Law Register, 737, and the cases for and against the proposition cited.

Third—There is testimony in the record from which the

jury would be warranted in finding a waiver of the condi-
tions of the policy.   This should have been submitted to
them.   The rule, as stated in *Hollis v. State Ins. Co.*, 65
Ia., 454, 21 N. W. Rep., 774, we consider the correct one.
It is said: "The general doctrine of the instructions is,
that if defendant, with full knowledge of the facts out of
which the forfeiture of the policy arose, neglected to de-
clare its intention of insisting on the forfeiture, but by its
acts recognized and treated the policy as a valid and sub-
sisting contract between it and plaintiff, and induced him
to act in that belief, it is precluded now from insisting
on the forfeiture.   This doctrine is excepted to by defend-
ant.   Its position is that to constitute a waiver of the pro-
visions of the policy providing for the forfeiture, the acts
relied on must be attended with such equitable circum-
stances as would create an estoppel; and as plaintiff was
not induced by the acts in question to in any manner change
his position with reference to the subject of the negotiation,
and as the acts were done after the forfeiture occurred, they
do not create an estoppel.   We think, however, that this
position is not tenable.   The principle on which the waiver
has been maintained in such cases is undoubtedly similar
to that of estoppel.   It was so held by this court in *Viele
v. Germania Ins. Co.*, 26 Ia., 9.

"But we think it is not true that such waiver can be
treated only by such acts or conduct as would create a
technical estoppel.   Neither forfeitures nor estoppels are
favored by the law, and it follows necessarily from this
consideration that the waiver of a forfeiture may be sus-
tained by circumstances which do not present the strong
equities which would be required to create an estoppel.
When plaintiff asserted a claim under the policy for the
loss, and defendant was informed of the facts out of which
the forfeiture grew, it had the right at once to treat the
contract as at an end.   If it had elected simply to remain
silent, perhaps a waiver could not have been inferred from

its silence. But if, with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plaintiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one. We think, therefore, that the general doctrine of the instructions is correct, and it is well sustained by the authorities. See *Titus v. Glens Falls Ins. Co.*, 81 N. Y., 410; *Insurance Co. v. Norton*, 96 U. S., 234; *Webster v. Phœnix Ins. Co.*, 36 Wis., 67; *Northwestern Mut. Ins. Co. v. Germania Ins. Co.*, 40 Wis., 453; *Cannon v. Home Ins. Co.*, 53 Wis., 585; S. C., 11 N. W. Rep., 11;" also, *Oshkosh, etc., Co. v. Germania Ins. Co.*, 71 Wis., 454; *Ins. Co. v. Kittle*, 39 Mich., 54; *Silverberg v. Ins. Co.*, 20 Reporter, 73; *Viele v. German Ins. Co.*, 96 Am. Dec., 83, note.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.