## PAXTON et al. v. SPENCER et al.

No. 4619.   Decided March 8, 1928.   (265 P. 751.)

*J. D. Skeen,* of Salt Lake City, for plaintiffs.

*Stephens, Brayton & Lowe,* of Salt Lake City, for defendants.

*Pierce, Critchlow & Marr,* of Salt Lake City, for intervener.

GIDEON, J.

On the 5th day of September, 1924, plaintiffs (appellants) entered into a contract with the state road commission of this state for the construction of a highway in Southern Utah. On the 9th day of September, 1924, the appellants sublet to the defendants (respondents) Walter Spencer, Edward H. Parry, William Pearce, and Archie D. Ryan the construction of a portion of said highway. A written contract bearing that date was entered into between the appellants and respondents. In this contract the work to be done was classified, and the agreed price per cubic yard and per linear foot was named. The respondents immediately entered upon the performance of the work specified in the contract of September 9, 1924.

In this opinion the plaintiffs will be designated appellants, and defendants Spencer, Parry, Pearce, and Ryan, respondents, and the Fidelity & Deposit Company, cross-appellant.

The cross-appellant, Fidelity & Deposit Company of Maryland, executed a surety bond on behalf of the respondents

in which the appellants were the obligees. After reciting the making of the contract between the appellants and respondents, the bond provided as follows:

"Now therefore, the conditions of this obligation are such that if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract and shall *promptly and faithfully pay the account contracted for material furnished and labor performed* under and by virtue of said contract, then this obligation to be void; otherwise, to remain in full force and effect.

"This bond shall inure to the direct benefit of every materialman, subcontractor, or mechanic or other person or concern that may furnish materials or perform labor for or upon the work or contract for which this bond is given, and such persons shall have a direct right of action against the principal and surety herein, in accordance with the provisions of chapter III, tit. 62, Laws of Utah 1917."

The respondents failed to complete the contract. This suit is to recover damages alleged to have been sustained by appellants by reason of the failure of respondents to complete the work as provided in the contract. Both the respondents and surety company are made defendants. When the issues were joined, a trial was had before the court and a jury that resulted in a verdict in favor of appellants and against the respondents in the sum of $8,184.97, and against the cross-appellant in the sum of $4,482.97. The plaintiffs appeal, and the surety company is also a cross-appellant.

The appellants assign as error the giving of one of the court's instructions known as No. 6½. It appears from the undisputed evidence that in the month of January, 1925, the subcontractors went to the appellants for financial assistance. The appellants were advised by the subcontractors that they had exhausted their credit and were not financially able to procure the money then needed to pay their labor and for materials. Appellants, or one of them, went with the subcontractors to Millard County Bank and a loan of $2,500 was obtained. This loan

was obtained by the appellants and the money immediately placed to the credit of the respondents and was used by them in paying their labor and for material used in the road construction. At this time the subcontractors gave a written order to the bank, by the terms of which the bank had the right to take from the next monthly estimate made upon the work done by the subcontractors the sum of $1,500 and apply the same upon the indebtedness evidenced by the $2,500 note. This payment was made and the amount credited accordingly. Thereafter, in March, 1925, the subcontractors were again unable to meet the payments for labor and material used in doing the road work. The appellants again procured and advanced or loaned to the subcontractors an additional $2,500. This money was placed to the credit of the subcontractors and also went to pay for labor done on the work provided for in the contract and also for materials used in connection with the doing of said work. Neither this note of $2,500 nor the $1,000 remaining due on the note of January was paid by the subcontractors. The court instructed the jury that these items of $2,500 and $1,000, making a total of $3,500, were not a loss chargeable against the surety company. The giving of that instruction is the only error assigned by appellants requiring serious consideration.

The appellants contend, and it is the basis of their argument, that the advancement or loan was to enable the subcontractors to continue the work and properly complete the contract and moreover that the moneys so advanced or loaned were used by the subcontractors to pay for labor done on the highway and for materials used in carrying on the construction of the road as provided in the contract, and to that extent reduced the amount of damages that the appellants would have, by the terms of the bond, the right to recover against the surety company and which the surety obligated itself to pay.

It is material and should be noted that the advances or loans made were not in payment of any estimates that had

been made or were due and payable under the terms of the contract and the amount of the loans was not based upon any estimated work then completed. It is not contended, nor is there any evidence, that the cross-appellant was advised of these advances or knew anything about the fact that the subcontractors were unable to finance the project at the date the advancements were made, nor, in fact, until about April 20, 1925. Among the conditions specified in the bond under which the surety became liable are the following:

"(a) That in the event of any default on the part of the principal a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety by registered mail at its office at Salt Lake City, Utah, promptly, and in any event within 10 days after the obligee or his representative, or the architect, if any, shall learn of such default; that the surety shall have the right within 30 days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract, shall also be subrogated to all of the rights of the principal; and any moneys or property that may at the time of such default be due, or that thereafter may become due to the principal under said contract, shall be credited upon any claim which the obligee may then or thereafter have against the surety, and the surplus, if any, applied as the surety may direct.

"(b) That no claim, suit, or action, by reason of any default, shall be brought by the obligee against the surety after the 1st day of June, 1925, nor shall recovery be had for damages accruing after that date. * * *

"(d) That the obligee shall faithfully perform all the terms, covenants, and conditions of such contract on the part of the obligee to be performed, and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than 10 per centum of such value) until the complete performance by the principal of all the terms, covenants, and conditions of said contract on the principal's part to be performed. * * *"

These provisions of the bond are material in the determination of the contention of appellants and also in considering the assignments of the cross-appellant.

The liability of the surety must be determined and measured by the terms of the bond. There is nothing in the bond indicating that the surety obligated itself to answer for money advanced by the appellants, or to reimburse appellants for anything except such amounts as were reasonably necessary to complete the contract in the event the contractors defaulted in their undertaking. On the contrary, the terms of the bond negative any such obligation on the part of the surety. It is provided in subdivision (a) that the surety had the right, after notice of the default, to complete the work itself or to procure others to complete the contract, and in such event the surety would be subrogated to all the rights of its defaulting principal. The failures of contractors for which surety companies may have become obligated are doubtless frequently due to inefficiency, incompetency, or unnecessary waste, and in such case the surety is given the right to proceed with the work on its own account or to procure others who would economically and efficiently do the work and thereby reduce its liability, or possibly relieve itself from any liability. To hold the surety liable for advancements made or money loaned to the contractors to enable them to carry out the contract without the assent of the surety, unless the facts are such that it would be inequitable to not hold the surety liable, is to read into the contract a liability not assumed by the surety and a liability clearly not contemplated by the parties at the date of the execution of the bond. The authorities seem to be quite uniform in holding that a surety is not liable for advances or loans made under circumstances similar to those appearing in this record.

The second headnote to *Bessemer Coke Co.* v. *Gleason*, 223 Pa. 84, 72 A. 257, which reflects the opinion of the court, is:

"Where a contract for the erection of coke ovens provided that 15 per cent of the monthly estimates should be retained by the coke company until final settlement, the surety on the bond securing per-

formance of the contract cannot be required to refund an over-payment by the coke company on account of the contractor for labor and supplies."

The Supreme Judicial Court of Maine, in the course of the opinion in the case of *Maine Central Railroad Co.* v. *National Surety Co.*, 113 Me. 465, 475, 94 A. 929, 933, L. R. A. 1916A, 881, at p. 886 of the last reference, says:

"It is not shown that the contractor used the $5,000 payment in liquidation of expenses of the work. It is perhaps entirely immaterial, so far as the surety is concerned, whether it was so used or not. Certainly, if it was not so used, the surety is not to be held liable for it. And it is our opinion that to the extent of that payment of $5,000 the surety is released; or, what seems to be the more logical statement, the surety is not to be charged with that as a part of the cost of the work. Such a holding is in accord with the great weight of authority."

The fourth headnote to *St. John's College* v. *Aetna Indemnity Co.*, 201 N. Y. 335, 94 N. E. 994, is as follows:

"Where an owner made advances to the contractor before the payments were due according to the contract, a surety company which guaranteed the contract is not liable for those payments."

See, also, *United States* v. *D. L. Taylor Co.* (D. C.) 268 F. 635.

The trial court did not err in giving the instruction complained of by the appellants, and the appellants' objection to that instruction must be overruled.

Passing to a consideration of the assignments of the cross-appellant, two questions are argued by the cross-appellant. It is contended, first, that the plaintiff cannot maintain this action by reason of the provisions of the bond that no suit or action by reason of any default could be brought by the obligee, appellants, against the surety after the 1st day of June, 1925; second, that the failure of the appellants to

retain the 10 per cent of the monthly estimates until the completion of the work releases the surety from any obligation upon the bond, or, if not a complete release, it pro tanto releases the surety for the 10 per cent not retained. It is therefore argued that the court erred in overruling cross-appellant's demurrer to the complaint, its objection to the introduction of any testimony under the complaint, its motion for nonsuit at the close of plaintiffs' testimony, and its motion for a directed verdict at the close of defendants' testimony, and also in refusing to give certain instructions requested by the cross-appellant.

It appears that the first information that the surety had of the inability of the subcontractors to complete the work was on or about the 20th day of April, 1925. Prior to that date the subcontractors had notified appellants here that they could not complete the work, that they had exhausted their credit, and were without funds to go forward with the contract. The agent of the surety at Salt Lake City was notified of this condition both by the principal contractors, appellants here, and by the subcontractors. The sufficiency of the notice to the agent of the surety is not questioned. Negotiations were had following this notice, and the testimony of the plaintiff Paxton is to the effect that he was advised by the agent of the surety to take over the work and complete it and thereafter it could be determined what liability, if any, rested upon the surety. On April 23, 1925, the manager of the surety at Salt Lake City wrote to the appellants to the effect that the surety had been advised of the default of the subcontractors, that the surety declined to take over the job, and advised the appellants that under their contract with the state road commission it was up to them to complete he job—

"and when it is completed we will then be in position to know exactly how much of a loss there is, if any, and how much we are liable for. You can readily see that this is the proper method of handling the situation. As I understand it, there is about 3,000 yards more to move which should be moved within two or three weeks, and if

you get in and do this work, which we presume you will do with the assistance of Ryan, Pearce, and Spencer, we will then be in position as surety on the bond of these contractors, to know just exactly how much our liability is. It is therefore up to you to complete the job, and we look to you to do it."

There was additional correspondence, but it is not material for the determination of the question here under review. The appellants took over and proceeded with the work which was finally completed on or about July 17, 1925. Thereafter, in August, 1925, appellants presented a statement of their claimed loss or damage to the surety at Salt Lake City, and, upon objection being made by reason of the uncertainty and, indefiniteness of the statement or claim, an audit was made by a firm of accountants, apparently under agreement of all parties, and thereafter the audit was submitted to the surety. No objection or intimation was given to the appellants by the surety either at the time of being notified that the work was not completed in April, or upon presentation of the claim in August, that the surety intended or proposed to stand upon its defense that the action had not been instituted on or before June 1st, and proceeded with the negotiations and participated in the making of the audit of the accounts not only of the appellants here after they had taken over the work and during its completion, but of the subcontractors during the progress of the work under their management. Whatever may be the legal effect as respects a waiver on the part of the surety by the negotiations had in April, 1925, we are clearly of the opinion that the conduct of its agents and officers, upon presentation of the claim in August, constituted a waiver of its right to object to the failure to bring the action before June 1, 1925.

In the course of the opinion in *Replogle* v. *American Ins. Co.*, 132 Ind. 360, 31 N. E. 947, the Supreme Court of Indiana says:

"An insurance company may unquestionably waive the right to avoid a policy for a breach of some of its conditions. Any act done

after notice of the breach of condition, which recognizes the validity of the policy, is a waiver of the right to avoid for that reason."

Further on in the opinion, in a quotation from *Titus* v. *Insurance Co.*, 81 N. Y. 410, it is said:

"A waiver cannot be inferred from its [the insurance company's] mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel."

Among other cases cited by appellants in support of the general statement in the above quotation are *Kiernan* v. *Dutchess County Mutual Ins. Co.*, 150 N. Y. 190, 44 N. E. 698; *Knickerbocker Ins. Co.* v. *Norton*, 96 U. S. 234, 24 L. Ed. 689; *Phoenix Mut. Life Ins. Co.* v. *Doster*, 106 U. S. 30, 1 S. Ct. 18, 27 L. Ed. 65; *Grigsby* v. *Russell*, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; *Billings* v. *German Ins. Co.*, 34 Neb. 502, 52 N. W. 397; *Missouri, K. & T. Trust Co.* v. *German Nat. Bank of Denver, Colo.* (C. C. A.) 77 F. 117; *Lynchburg Cotton Mill Co.* v. *Travelers' Ins. Co.* (C. C. A.) 149 F. 954, 9 L. R. A. (N. S.) 654.

Measured by the principles enunciated in the foregoing cases, it is our judgment that the court was justified in submitting to the jury whether the surety had waived its defense founded upon the provisions of the bond stipulating that the obligee should not maintain an action against the surety after June 1, 1925. Indeed, we are of the opinion that the facts established, as a matter of law, constitute a

waiver on the part of the surety of the provision of the bond limiting the time for instituting an action against it.

The failure of the appellants to retain the 10 per cent of the estimates as specified in the bond presents, in our judgment, the most serious question in the record. To determine that the surety had waived its right to object to the bringing of an action after the date specified in the contract does not carry with it the implication that it has waived any other defenses. There is nothing in the evidence to support the appellants' contention that the surety had waived any right given it by the terms of the bond to have the 10 per cent of the monthly estimates retained by the appellants as conditioned in the bond. The court instructed the jury in a lengthy instruction, No. 6, to the effect that if the jury should find certain facts, such facts would constitute a waiver by the surety of its release from liability because of appellants' failure to comply with the terms of the contract in retaining the 10 per cent and not instituting the action on or before June 1st. The length of that instruction is such that it is not desirable or necessary to copy it in full in this opinion.

There was no error in submitting to the jury whether the surety had waived its right to object to the bringing of the action after June 1, 1925, but we find nothing in the record to justify the court in submitting to the jury the question of waiver on the part of the surety of any defense given to it under the terms of the contract requiring the principal contractor, appellants here, to retain 10 per cent of the monthly estimates. Conditions or provisions requiring the retention of 10 per cent of a contract until the completion of the work are, under all of the authorities, binding upon the parties to the contract. Such provisions are clearly made for the benefit of the surety as well as for the contractors and, as stated by some courts, are an incentive to make the contractor complete the work according to the terms of the agreement. Admittedly, if the surety had undertaken the

completion of this work, or if it had procured others to complete the work, it was entitled, by the terms of the bond, to be subrogated to the rights of the contractors, or subcontractors in this case, and to receive the 10 per cent, retained if it had been retained as the contract provided it should be. It is admitted in this case that the appellants failed to retain the 10 per cent of the monthly estimates. It is shown and not disputed that the total of the estimates allowed the subcontractors was $23,140, and that amount was paid in full less a fraction of a per cent which is immaterial, as the work progressed and before the surety company was notified that its principal had defaulted in carrying on and completing the work. The 10 per cent of these estimates would necessarily be $2,314.

The authorities are not agreed as to whether the failure to retain a percentage of the estimates under a bond requiring such retention is a full release of the surety or a release pro tanto of any damages sustained by the obligor of the bond. In the absence of any showing that it would be unjust or inequitable to deny a full release, in our judgment, the rule releasing the surety pro tanto is supported by the better reason and is more in conformity with the contract between the parties and more consonant with justice than to hold that by such failure to retain the 10 per cent provided the surety should be wholly released. There is nothing in this record to indicate or to suggest that the surety sustained any greater loss than its deprivation of the 10 per cent by the failure of the principal contractors to retain such amount from the payments to the subcontractors. It was, nevertheless, under the express provision of the bond, the right of the surety to have such percentage retained for its benefit, and it was the duty of the principal contractors, under the terms of the bond, to retain such per cent for the benefit of the surety. As said by the Supreme Court of Pennsylvania in *Bessemer Coke Co.* v. *Gleason,* supra:

"An essential fact of the agreement was that 15 per cent of the estimates should be retained by plaintiff. If it had complied with the

agreement in this respect, and made payments only as called for, and if its adherence to the agreement had resulted in the inability of the contractor to carry out the contract, then, as a matter of course, the surety would have been liable for any failure in performance; but it will not do for the plaintiff to say that it paid out money in a way or to an extent not authorized in the contract, but which nevertheless went in relief of the possible obligations of the surety, and for that reason claim the right to recover. It should have confined its actions strictly to the limitations fixed in the contract, if it expected to look to the surety, under the obligations of the bond."

See, also, *St. John's College* v. *Aetna Ins. Co.*, supra, and *Pauly Jail Bldg. & Mfg. Co.* v. *Collins*, 138 Wis. 494, 120 N. W. 225.

The court erred to the prejudice of the cross-appellant in not instructing the jury to deduct from any damages found due and payable from the surety the 10 per cent of the monthly estimates.

The loss sustained by the appellants by reason of the default of the respondents was determined by a jury. No complaint is made of the court's instructions bearing on the question of the amount of loss sustained by the appellants. The verdict and judgment against the cross-appellant is $4,482.97. The court instructed the jury to award to the appellants 8 per cent interest from July 17, 1925, on the amount of damages which the jury found the appellants had sustained and for which the subcontractors or the surety company were liable. The presumption is that the jury followed that instruction and, after having determined the amount of damages sustained for which the surety is liable, estimated interest on such amount, as instructed by the court, from July 17, 1925, and arrived at the amount of the verdict, to wit, $4,482.97. The cross-appellant is entitled, as a credit upon that judgment, to the amount of the 10 per cent which the appellants should have retained, namely, $2,314, together with 8 per cent interest thereon from July 17, 1925, to the date of the judgment.

By reason of the jury's finding the damages sustained and the additional fact that the credit to which the cross-appellant is entitled is merely a matter of mathematical calculation, it is neither necessary nor desirable to compel the parties to incur the additional expense of a new trial.

The subcontractors did not appeal from the judgment entered against them, nor did they appear by counsel or otherwise in this court.

It appears that immediately after the execution of the bond on September 9, 1924, the subcontractors organized a corporation known as the Southern Utah Construction Company and continued the work in the name of that corporation. Considerable is said in the briefs of cross-appellant respecting this corporation, but as it does not appear that the appellants recognized that corporation as substituting the individual respondents in the contract it is unnecessary to consider counsel's argument regarding that phase of the case.

It is ordered that, if appellants file in this court within 20 days their consent that the judgment against the cross-appellant may be reduced in the amount indicated, an order of affirmance will be entered. Otherwise, the judgment against the surety company will be reversed and a new trial granted. In all other respects the judgment is affirmed.

The cross-appellant is entitled to the costs incurred on this appeal, with the exception of the expense of printing the supplemental or additional abstract. ■ It does not appear that the printing of that abstract was necessary for an intelligent presentation of the questions raised by the appeal of either party.

Such is the order.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.