Argued 10 December, 1902; decided 19 January, 1903.

**WEHRUNG** *v.* **DENHAM.**

[71 Pac. 133.]

Construction of Building Contract—Entire or Severable.*

1. A contract providing that a builder will for a given sum construct several described buildings according to the plans provided, and that the owners will pay him an agreed price by stated payments of a certain per cent of the labor performed and material then furnished, the balance to be retained until a specified time after the completion of the work, is an entire and indivisable contract, although it also contains a further proviso that the entire sum shall be so segregated·in the payment thereof that certain sums shall pay for certain buildings.

Release of Surety by Material Change in Contract.

2. An unwarranted material change in the wording or stipulations of a con-

---

*Note.—The following cases on the severability of building contracts are annotated: *Fullmer* v. *Poust,* 35 Am. St. Rep. 881, 882; *Huyett & Smith Co.* v. *Chicago Edison Co.* 59 Am. St. Rep. 272, 285-289; *Broxton* v. *Nelson,* 68 Am. St. Rep. 97, 101.

As to the entirety of fire insurance contracts see notes to *Loomis* v. *Rockford Ins. Co.* 20 Am. St. Rep. 96, 101, 8 L. R. A. 834; *Pioneer Mfg. Co.* v. *Phoenix Assur. Co.* 28 Am. St. Rep. 673, 677; *Stevens* v. *Queen Ins. Co.* 29 Am. St. Rep. 905, 910; *Coleman* v. *Insurance Co.* 34 Am. St. Rep. 565, 573, 16 L. R. A. 174; *Wright* v. *Fire Ins. Assoc.* 19 L. R. A. 211; *Dumas* v. *Northwestern Nat. Ins. Co.* 40 L. R. A. 358.

tract absolutely releases all nonconsenting parties and sureties, whether they are thereby injured or not.

EFFECT OF PREMATURE PAYMENTS ON PARTIES.

3. A premature payment on a contract cannot affect the rights of the parties because they both manifestly consented to the modification that is necessarily involved.

RELEASING SURETY BY ALTERING THE LIABILITY.

4. Only impairment of the security intended to be reserved for the benefit of the surety on a bond, or any noncompliance with the terms thereof by which the surety's liability may be materially varied, without his consent, will operate to absolutely discharge the latter : *Cochran* v. *Baker*, 34 Or. 555, overruled.

From Marion : GEORGE H. BURNETT, Judge.

This is an action by W. H. Wehrung and others, constituting the State Board of Agriculture of the State of Oregon, against R. T. Denham and others upon a bond given for the faithful performance, on the part of the principal, of a contract for the construction of certain buildings and the repairing of others, entered into with plaintiff. The Legislative Assembly of the State of Oregon, at its biennial session in 1901, appropriated for the use of plaintiff on the state fair grounds the following sums of money, namely : For the improvement of machinery hall, $585.50 ; for the construction of a creamery building, $707.50 ; for the construction of a farm cottage, $695.75 ; and for addition and improvements to pavilion, $3,407.75. On May 6, 1901, in pursuance of the powers conferred upon it by the legislature, and for the purpose of carrying into effect the object of said appropriations, the board entered into the contract referred to with Denham, which provides that he will, "for the consideration hereinafter mentioned," and before August 1, 1901, erect and finish "the several buildings hereby agreed to be erected at fair grounds, Marion County, Oregon, provided that the said cottage be completed by June 15, 1901," con-

---

As to the right of one who has contracted for a fixed sum to serve another during a specified period to recover, either on the contract or on a *quantum meruit*, for serving a less period, see *Hildebrand* v. *American Fine Art Co.* 53 L. R. A. 826 ; *Timberlake* v. *Thayer*, 24 L. R. A. 231-235 ; *Stewart* v. *Thayer*, 60 Am. St. Rep. 407, 410 ; note in 59 Am. St. Rep. 289-291. See. also, *Katz* v. *Bedford* 1 L. R. A. 826 for note on Entirety or Severability of Contracts, and Monograph, Entirety of Contracts—When Complete Performance Is Essential to a Cause of Action *ex Contractu*, with *Huyett & Smith Co.* v. *Chicago Edison Co*, 59 Am. St. Rep. 272, 277-295.—REPORTER.

formable to certain drawings and specifications, to the satisfaction of W. D. Pugh, the architect, to be testified to by a writing or certificate under the hand of the said Pugh, and also provide such materials as are called for and required by such drawings and specifications for the erection and completion of said buildings and other work on buildings mentioned therein, ''for the sum of four thousand six hundred and seventy-eight 50-100 dollars,'' and which, upon the other hand, provides that the State Board of Agriculture shall and will, in consideration of the covenants and agreements on the part of Denham being strictly performed, well and truly pay or cause to be paid to him or his assigns the said sum of $4,678.50, in manner following: ''Semimonthly payments to be made seventy-five (75) per cent of labor performed and material used. The balance, twenty-five (25) per cent of the total contract price, to be made thirty-three (33) days after the buildings are completely finished and delivered and accepted by the architect and the party of the first part (the board), unless some defect shall meanwhile have been discovered in the said work,'' provided that in each case a certificate signed by the architect be obtained, stating that the work for which said payment is to be made is well done and that such payment is due. It is further stipulated that should the contractor, during the progress of said work, refuse or neglect to supply a sufficiency of materials or workmen, the board should have the authority to provide materials and workmen, after giving three days' notice in writing, and that the expenses thereof should be deducted from the contract price, and ''that the total sum hereinbefore expressed, to wit, the sum of $4,678.50, shall be so segregated and divided in the payment thereof as to require the sum of $585.50 for the machinery hall; $707.50 for creamery building; $695.75 for farm cottage; $2,689.75, addition to pavilion.'' The bond sued on was executed by Denham as principal with J. C. Goodale and F. P. Talkington as sureties, and is conditioned for the faithful performance of this contract on the part of Denham.

It is admitted, as we understand it, by the failure of plaintiff to deny certain affirmative allegations contained in the

answer, that Denham entered upon the performance of the contract, and proceeded therewith until about July 10, 1901, during which time he completed, according to agreement, the farm cottage and improvements to machinery hall, and also furnished labor and materials, which he employed and used in the construction of the creamery building and the addition and improvements to the pavilion; that plaintiff paid Denham, on June 24, 1901, $286.50, being for 75 per cent of the labor performed and materials furnished up to June 22d in the construction of machinery hall, and on July 9, 1901, made a final payment of $299, the building having been completed the day previous, aggregating the full sum of $585.50; that plaintiff paid Denham, on June 10, 1901, $401.67, being for 75 per cent of the labor and materials furnished in the construction of the farm cottage to June 1st, and subsequently made a payment of $165, and a further and final payment of $129.08 on July 9, 1901, the day after the completion of said cottage, and that, on said July 9th, and prior thereto, plaintiff paid Denham the full 75 per cent of the value of all labor and materials furnished in the construction of the creamery building and the improvements on the pavilion; that Denham thereafter ceased to observe the stipulations of his contract, and that plaintiff completed the work, as it was authorized to do. Judgment was rendered on the pleadings against the plaintiff and in favor of the sureties, dismissing the action, and for costs, from which the plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief over the name of *Carson & Adams,* with an oral argument by *Mr. Loring K. Adams.*

For respondents there was a brief over the names of *John H. McNary* and *Brown & Wrightman,* with an oral argument by *Mr. McNary* and *Mr. F. T. Wrightman.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

Two questions are presented by the record: (1) Is the contract, to secure the faithful performance of which the bond

sued on was given, severable, so that it may be construed as a several contract for the construction or improvement of each of the four separate buildings involved, and (2) are the sureties relieved of their obligation by the premature payment of the amounts due for work and labor performed by Denham, if such payments may be considered prematurely made?

1. The first question may be determined by an inspection of the contract. The bond was given to insure its faithful performance, and, in order to determine the liability of the sureties under such bond, the contract must be read into it and made a part of it, and its effect determined by a proper construction thereof. The contract was for the construction, improvement, and repairing of all four of the buildings designated, the stipulated consideration therefor being a gross sum, namely, $4,678.50. This sum the board covenanted and agreed to pay in the following manner: Semimonthly payments to be made 75 per cent of labor performed and material used. The balance, or 25 per cent of the total contract price, to be made thirty-three days after the buildings are completely finished and delivered, and accepted by the architect and the board. Thus far there can be no inference deduced that there was any intended segregation in the minds of the parties when they entered into contractual relations. Indeed, the language precludes any such inference, and by the plainest statement possible treats the matter as if the entire work was to be performed under one inseverable undertaking. The last clause seems to cast a shade of doubt upon this interpretation. It provides that the total sum of $4,678.50 shall be so segregated and divided in the payment thereof as to require the sum of $585.50 for machinery hall, $707.50 for the creamery building, $695.75 for the farm cottage, and $2,689.75 for additions to pavilion; but, when considered along with the rest of the contract, it does not qualify or vary in any particular the manner of payments as previously stated and agreed upon,—that is, 75 per cent of the value of the labor performed and materials used, semimonthly, as the work progressed, and 25 per cent of the total contract price thirty-three days after completion,—and is not,

in our opinion, effective to render the contract severable as to each or either of the buildings concerned. Just why the latter clause was inserted is not apparent unless it was to avoid any semblance on the part of the board of having exceeded the specific appropriations made by the legislature for these several buildings and improvements. In support of this interpretation, see *Broxton* v. *Nelson,* 103 Ga. 327 (30 S. E. 38, 68 Am. St. Rep. 97); *Clark* v. *Collier,* 100 Cal. 256 (34 Pac. 677).

2. Under this construction of the contract, it is manifest that, on the 9th of July, 1901, the plaintiff paid Denham more than it had stipulated to pay him at that time by one fourth of the amount required to be paid for machinery hall and the farm cottage when completed, and a much larger sum without first having obtained the proper certificate of the architect as to the manner in which the work had been done; and thus is the second question, previously stated, presented. The question is not one of first impression, as we considered it in *Hand Mfg. Co.* v. *Marks,* 36 Or. 523 (59 Pac. 549), a case which it is contended by respondents is decisive of this. It should be observed that there has been no material change or alteration made in the wording or stipulations of the contract. If such a change or alteration had been made, it would have *ipso facto* discharged the nonconsenting sureties, whether it operated to their injury or not. They have a right to stand upon the very letter of their undertaking, and cannot be bound by any other to which they have not assented. This doctrine applies to parties as well as to sureties, wherever there is an unwarranted change or alteration in the contract or agreement.

3. The defense here is that plaintiff has failed to perform as it undertook to do, by anticipating payments to the contractor, and making them without requiring the proper certification of the work done as stipulated. It is clear that such premature payments would not discharge a party to the contract, as they would involve assent thereto, the one paying and the other accepting.

4. As to the surety, however, a different rule obtains. In such a case, it does not seem to us that the doctrine that the

surety may stand upon the strict letter of his contract has exact application.   If what has been done by the obligee could not by any possibility have materially varied or enlarged the liability of the surety, it is difficult to see how it could discharge him. The general rule may be stated as it is in *Mayhew* v. *Boyd,* 5 Md. 102 (59 Am. Dec. 101), namely: "Any dealings with the principal debtor by the creditor which amount to a departure from the contract by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's liability without his assent, operate as a discharge of the surety."   In a case like the present, where the payments are required to be made in certain proportions as the work progresses, the balance remaining in the hands of the principal for a stated period after the completion of the work, it is fair to assume that the provision is for the benefit of the surety, as he might not have obligated himself if it had been otherwise. The amounts to be withheld, therefore, become a fund in the hands of the principal for his protection. . This is within the case of *Calvert* v. *London Dock Co.* 2 Keen, 638, the leading case upon the subject, and which has been subsequently followed with scarcely a dissenting judicial utterance.   In that case, the company, as the board has done here, anticipated payments largely in advance of the stipulated conditions, and the court said: "What the company did was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure which, by the contract, was intended to be applied to him.   And the company, instead of keeping themselves in the situation of debtors, having in their hands one fourth of the value of the work done, became creditors to a large amount, without any security; and, under the circumstances, I think that their situation with respect to Streather was so far altered that the sureties must be considered to be discharged from their suretyship."

And, wherever it is manifest that the security intended to be reserved for the benefit of the surety has become impaired by what has been done by the obligee in the nonobservance of his

undertaking, or which might by possibility materially vary or enlarge the surety's liabilities, it will operate to the latter's absolute discharge. The obligee owes a duty to the surety as well as to the other contracting party, and is bound to respect his rights in his dealings under the contract, and if he fails in this, to the surety's possible injury in a material respect, he absolves the latter from his obligation. This is the doctrine of *Hand Mfg. Co.* v. *Marks,* 36 Or. 523 (59 Pac. 549), and is controlling in the case at bar. In further support thereof, we cite the following additional cases: *St. Mary's College* v. *Meagher,* 11 Ky. Law Rep. 112 (11 S. W. 608); *Evans* v. *Graden,* 125 Mo. 72 (28 S. W. 439); *Bell* v. *Trimby* (Tenn. Ch. App.), 38 S. W. 100; *Ryan* v. *Morton,* 65 Tex. 528; *City Council of Greenville* v. *Ormand,* 51 S. C. 121 (28 S. E. 147); *Peters* v. *Mackay,* 20 Wash. 172 (54 Pac. 1122); *Brennan* v. *Clark,* 29 Neb. 385 (45 N. W. 472); *Gray* v. *School Dist.* 35 Neb. 438 (53 N. W. 377); *Taylor* v. *Jeter,* 23 Mo. 244.

In coming to this conclusion, we have not overlooked the case of *Cochran* v. *Baker,* 34 Or. 555 (52 Pac. 520, 56 Pac. 641), wherein it was held that a premature payment on a building contract by the principal operated as a discharge *pro tanto* only of the surety. By an examination of that case it will be seen that the holding was not necessary to a decision thereof. The real question was whether a nonsuit should have been granted. As said in the opinion, it was elicited "that defendant knew in most part the manner in which payments were being made, and to a considerable extent directed how and when they should be made; so that, in any event, it would have been manifestly improper to grant the nonsuit." It follows, therefore, that the case itself was rightly and properly decided, but, in so far as the holding there announced is in conflict with the present one, it should be considered as overruled. It follows that the judgment of the court below should be affirmed, and it is so ordered.

                                                         AFFIRMED.