Argued December 12, reversed December 27, 1917.

# DERBY *v.* UNITED STATES FIDELITY & GUARANTY CO.*

(169 Pac. 500.)

**States—Contracts—Right of Surety to Fulfill Contract.**

1. It was the manifest right of the surety of a contractor to install plumbing in certain buildings for the state to fulfill the contract on its principal's default.

**Evidence—Presumptions—Knowledge of Law—Knowledge of Bond Containing Statutory Condition.**

2. The law imputes to a bank, which lent money to a contractor with the state to install plumbing in certain buildings, knowledge of the contractor's bond containing the statutory condition that the contractor should promptly make payments to all persons supplying labor or materials.

**Evidence—Right of Surety to Perform Contract—Notice to Bank.**

3. As a matter of law, a bank which lent money to a contractor with the state to install plumbing in its buildings was charged with notice of the right of the contractor's surety to take up and perform the contract on the contractor's default and to be subrogated to all the rights of the state as against him, including the application of the reserve percentages to cover the consequences of his failure.

**Evidence—Presumption—Knowledge of Law and Consequences—Compliance With Statute.**

4. By operation of law, notice was imparted to a bank, which lent money to a contractor with the state to install plumbing in its buildings, of what was required by the statute as to the contractor's giving bond, and of what it might have learned by inquiring of the state's officers, i. e., that a bond had been given, so that the surety making good the contractor's default would succeed to all its rights and be subrogated to the state's remedies to work out its reimbursement, all in preference to one holding a demand against the contractor for money lent to him.

**Subrogation—Surety—Privity of Contract.**

5. There was no privity of contract between a bank lending money to a contractor with the state to install plumbing in its buildings and the state, as there was between the contractor's surety and the state; the bank having no right, like the surety, to finish the work on the contractor's default with the resulting right of subrogation.

---

*On right of sureties on contractor's bond, who perform contract on abandonment by contractor, to moneys unpaid on contract as against the assignee or creditors of contractor, see note in 14 L. R. A. (N. S.) 457.

On implied power to incorporate in contract for public work or in contractor's bond the requirement that the contractor shall pay laborers and materialmen, see notes in 11 L. R. A. (N. S.) 1028, and 46 L. R. A. (N. S.) 325.                    REPORTER.

**Subrogation—Right of Surety to Perform on Principal's Default—Effect—Exclusion of General Creditor.**

6.   On account of the elementary right of the surety of a contractor with the state to install plumbing in buildings to perform the contract on the contractor's default, when it did so it was entitled to all the benefits coming to the contractor under the contract, and to be subrogated to all the rights of the state respecting reserve percentages as a lever with which to enforce performance; all to the exclusion of a bank and general creditor.

[As to the right of subrogation, see note in 99 Am. St. Rep. 474.]

**Bankruptcy—Rights of Trustee Against Bankrupt's Surety.**

7.   Likewise, the contractor's trustee in bankruptcy was postponed to the rights of the surety, since the trustee takes nothing his bankrupt does not take.

**States—Surety for Contractor With State—Performance of Contract on Principal's Default—Right to Settle Accounts With State Auditor—Statute.**

8.   When a contractor with the state to install plumbing in buildings abandoned the work and his surety took his place and performed, the surety was entitled to settle its accounts and liability under the contracts and bonds with the state through its constitutional auditor, the Secretary of State, pursuant to Laws of 1913, page 607, prescribing such officer's duties with relation to the examination and determination of claims.

**States—Surety on Contract With State—Application for Settlement After Performance—Right of Secretary of State.**

9.   When the surety of a contractor with the state to install plumbing in its buildings had finished the work on the contractor's default, and applied to the Secretary of State for settlement, he had a right to inquire, not only whether the surety had finished the work, but had complied with its bonds and paid persons supplying the contractor with labor and material for which they had not been paid.

**Evidence—Presumption—Performance of Official Duty.**

10.   There is a presumption that an official duty has been regularly performed.

**States—Decision of Auditor—Absence of Evidence to Controvert.**

11.   The decision of the state's auditing officer, the Secretary of State, as to the correctness of the claim of the surety for a contractor with the state which has performed on the contractor's default, is only *prima facie* correct, and may be disputed; but, where nothing appears to controvert the auditor's decision, it must control, it not being enough to cast doubts on the oral testimony by mere cross-examination.

**Bankruptcy—Burden of Proof—Attack on Accounting by Trustee.**

12.   If the trustee in bankruptcy of a contractor with the state to install plumbing in buildings, and the bank which lent the contractor money, would overturn the accounting had by the surety for the contractor with the Secretary of State, supported by competent testimony, they must show the account is erroneous, and specify wherein it is at fault.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by F. N. Derby as trustee in bankruptcy for W. H. Rogers, doing business under the name of Rogers Plumbing & Heating Company, against the United States Fidelity & Guaranty Company, the United States National Bank and the Board of State Fair Directors. The directors do not appear to have been served or to have made any appearance in the case. For convenience the plaintiff will be designated as trustee, the United States Fidelity & Guaranty Company will be called the company and the United States National Bank will be known as the bank.

The substance of the complaint is that Rogers entered into contracts with the state for installation of plumbing in three certain buildings in connection with each of which he gave a bond to the state with the company as surety conditioned as follows:

"Now therefore, if the said principal, Rogers Plumbing & Heating Company, shall faithfully perform and execute said contract in full conformance with the terms thereof and to the satisfaction of the state architect, and shall faithfully perform all of the obligations of such contract, and shall promptly make payments to all persons supplying said principal with labor and materials for any portion of the work provided for in said contract, and shall hold the state harmless against any liens of whatsoever nature that may arise in course of the construction of the same, then this obligation to be void, otherwise to remain in full force and effect."

The first contract was dated December 4, 1913, for an armory building at Roseburg, Oregon, at the price of $4,140. The next was for the Exhibits Building at the Oregon State Fair Grounds at the contract price of $2,111, and the last was one dated June 3, 1914, for

the Feeble Minded Institution at the price of $737.60. The only thing in the complaint relating to the bank is the following allegation admitted by the bank:

"That shortly after the execution of the second contract herein referred to, to-wit: the said contract between the said W. H. Rogers and the State of Oregon, pertaining to the installation of the said plumbing in the Exhibits Building at the Oregon State Fair Ground, the said W. H. Rogers assigned to the defendant the United States National Bank, all sums of money due and owing from the State of Oregon to said W. H. Rogers under and by virtue of the said contract as the same should be fulfilled, and as said money should become due."

It is stated that Rogers entered upon the performance of the three contracts and after he had partly completed them he defaulted and

"thereafter the said United States Fidelity & Guaranty Company, defendant herein, as surety on said bond aforesaid, undertook the completion of said contracts and did thereafter complete the same."

The plaintiff also avers:·

"That when the said contracts were so completed by the said United States Fidelity and Guaranty Company, said defendant collected from the State of Oregon the balance due from said state upon the contracts as aforesaid, including the amounts which had been earned by the said W. H. Rogers prior to the time of his default and for which he had not been paid, save and except the sum of $1,511.60, which said sum has been ordered paid to the said defendant United States Fidelity & Guaranty Company which is still held by the Board of State Fair Directors."

Stating in substance that he has no means of knowing the amount of labor or material furnished by Rogers prior to his default, and that the company used certain material belonging to the contractor which was

on hand, the exact amount of which was unknown to the trustee, he demands an accounting from the company. The bank admits the execution of the agreement for work at the Fair Grounds and of the surety bond accompanying it and the assignment to it by Rogers of the money that might become due to him under that contract. Otherwise it traverses the most of the complaint in material particulars. It states that when Rogers began performance of the contract for the building at the Fair Grounds he applied to it for money to enable him to purchase material and pay wages necessary for the execution of the work, and that he delivered to the bank the following writing:

"Ben W. Olcott, Secretary of State,
    "Salem, Oregon.

"You are hereby authorized and instructed to retain and pay over to the United States National Bank of Salem, Oregon, any moneys that may be due or become due on any contract for furnishing of materials entering into a building now being constructed on the State Fair Grounds, under contract entered into by me with the State of Oregon.

"We authorize and empower said United States National Bank to act as our agent and in our name and stead to sign, receipt for and receive any warrant which may hereafter be drawn on the Treasury of the State of Oregon in payment of any of our warrants when paid by the State Treasurer.

                    "ROGERS PLUMBING & HEATING Co.,
                        "By W. H. ROGERS.

"The foregoing duplicate order (the original of which is on file in the office of Ben W. Olcott, Secretary of State) is given to secure any indebtedness incurred by us heretofore or that may be incurred in the future to the United States National Bank, of Salem, Oregon.

"Dated at Salem, Oregon, May 26, 1914.
                    "ROGERS PLUMBING & HEATING Co.,
                        "By W. H. ROGERS."

It counts upon this writing as an assignment of all money to become due to Rogers on the Fair Grounds contract and says that on the faith thereof it made sundry advances to him amounting to $1,500 which he used in the purchase of material and payment of labor in the performance of that job and for which he gave his notes to the bank no part of which has been paid except two amounts stated. The prayer of the bank is to the effect that the company take no right or interest in any of the money due on the contract and for its costs and disbursements.

After denying all the complaint except as stated in its answer, the company alleges in substance as to each contract that it gave the undertaking mentioned with the condition already quoted; that at the time of the execution of each contract and its bond, Rogers covenanted and agreed with the company to indemnify it and save it harmless against all loss, cost and damage that might accrue to it whether by reason of his act, default or neglect or on account of claims made in connection with the bond and agreed to repay the company all such loss; and that on the date of execution of the contract and undertaking, for the better protection of the company, Rogers assigned, transferred and conveyed to the company all his right, title and interest in and to all tools, plant, equipment and materials of every nature and description that he might then or thereafter have upon the work including also all materials purchased for or chargeable to the contract wherever situated; and further agreed that as of the date of the application for the bond the company should as his surety be subrogated to all his rights, privileges and profits as principal, and did as of that date assign, transfer and convey to the company all the deferred payments and retained percent-

ages and any and all moneys and profits that might become due and payable to him at the time of his breach or default or that might thereafter become due and payable to him on account of such contract or on account of extra work or materials supplied in connection therewith, and that all such moneys should be the sole property of the company to be by it credited upon any cost, charge or expense sustained or incurred by it under its bond of suretyship. The company's answer states as to every contract that it entered upon the work for the purpose of finishing it after the default of Rogers, discharged his unpaid liabilities for labor and materials, and completed the undertaking at a loss to itself in an amount stated for each building. The company also traverses the answer of the bank. The Circuit Court heard the case and decreed in substance that the company pay to the trustee $825.05, and to the bank $1,034.37, together with the costs and disbursements of each. - The company appeals.          REVERSED.   SUIT DISMISSED.

For appellant, United States Fidelity & Guaranty Company, there was a brief over the names of *Mr. John Bayne* and *Messrs. Beach, Simon & Nelson,* with an oral argument by *Mr. Bayne.*

For respondent, F. N. Derby, there was a brief over the names of *Mr. Walter C. Winslow* and *Mr. Robin D. Day,* with an oral argument by *Mr. Winslow.*

For respondent, United States National Bank (of Salem, Oregon), there was a brief over the name of *Messrs. Carson & Brown,* with an oral argument by *Mr. John H. Carson.*

No appearance for respondents, the Board of State Fair Directors.

MR. JUSTICE BURNETT delivered the opinion of the court.

1-4. It is stated by the complaint and although formally denied on information and belief by the bank, it is not contested that the company entered upon and completed the three contracts after the default of Rogers. It first will be necessary to settle the matter of priority between the company and the bank. The former was the surety of Rogers, undertaking in each instance not only that he would perform all the obligations of the contract but also that he should promptly make payments to all persons supplying him with labor or materials for any portion of the work required. The bank did not occupy the position of surety. It loaned money to Rogers and became only his general creditor. There is no proof that the cash which the bank advanced went into the Fair Grounds building and even if there were, its payment is not covered by the statutory bond. It is provided in substance by Chapter 27, Laws of 1913, p. 59, that the contractor in instances like those described in these proceedings

"shall be required before commencing such work, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts."

The agreement between the state and Rogers stipulated in each instance for the retention of 20 per cent of the contract price until the entire completion of the work, the other 80 per cent to be paid proportionately at different stages of its progress. It was the manifest right of the surety to fulfill the contract on the

default of its principal. Whatever right it had to the
fund reserved under the contract is coeval with the
execution of the bond and the signing of the building
agreement, both instruments being part of the same
transaction. The bank knew that the contract was
with the state. The law imputes to it a knowledge
of the bond containing the statutory condition. As a
matter of law it was charged with notice of the right
of the surety to take up and perform the contract in
place of Rogers on his default and be subrogated to
all the rights of the state as against him including the
application of the reserved percentages to cover the
consequences of his failure. This position is forti-
fied by the plea of the company proved by the docu-
ments signed by Rogers as part of the transaction
whereby he transferred to it as his surety all money
of every sort payable to him under the contract.
That assignment was only declaratory of the right the
law gave to the surety. This is further strengthened
by the allegation which the bank admits to the effect
that the assignment to it of the money took place
shortly after the execution of the Fair Grounds con-
tract; while the proof shows that the assignment to
the company was made as part of the execution of the
contract. It is not a question as between two differ-
ent assignees of the same chose in action each igno-
rant of the other's claim to it where it might be con-
tended that the one first giving notice to the person
owing the debt that it had been transferred would be
entitled to collect it. By operation of law notice was
imparted to the bank of what is required by the stat-
ute and what it might have learned in fact by inquiry
of the officers of the state, namely, that a bond had
been given with the consequence arising from the
situation that the surety making good the default

would succeed to all the rights of the contractor and be subrogated to the remedies of the state to work out its reimbursement, all in preference to one holding a demand against the contractor for money loaned to him. Within the terms of this admitted allegation of the writing set forth in the answer of the bank it was evidently contemplated by it and Rogers that the bank should receive the money due to him and not to his surety as the contract was fulfilled by him and not by the company.

5. There was no privity of contract between the bank and the state as there was between the surety and the state. The bank had no right like the company to step in and finish the work with the resulting right of subrogation. A leading case under a statute like ours is *Henningsen* v. *United States Fidelity & Guaranty Co.,* 208 U. S. 404 (52 L. Ed. 547, 28 Sup. Ct. Rep. 389). As in the present instance a bank had loaned money to a contractor and he assigned to it the money coming to him under his agreement; but he afterwards defaulted and his surety was compelled to finish his job. Mr. Justice Brewer discusses all the features of the case and concludes the matter by approval of the following language of the Circuit Court of Appeals:

"Whatever equity, if any, the bank had to the fund in question arose solely by reason of the loans it made to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation. But it is equally clear that the bank was not for it was a mere volunteer and under no legal obligation to loan its money."

6, 7. The following authorities are to the same effect: *Title, Guaranty & Surety Co.* v. *Dutcher,* 203 Fed. 167; *Illinois Surety Co.* v. *City of Galion,* 211 Fed. 161; *In re Scofield Co.,* 215 Fed. 45 (131 C. C. A. 353); *In re*

*P. McGarry & Son,* 240 Fed. 400. In *Wehrung* v. *Denham,* 42 Or. 386, 392 (71 Pac. 133), this court held that retained payments constitute a fund for the protection of the surety. It is plain, therefore, that on account of the elementary right of the surety to enter upon and perform the contract in which its principal has made default it is entitled to all the benefits coming to him under the contract and to be subrogated to all the rights of the state respecting the reserved percentages as a lever with which to enforce performance, all to the exclusion of the bank which occupies only the position of general creditor. This same principle also postpones the trustee who takes nothing his bankrupt could not take.

8. We pass, therefore, to the question of whether the company has shown a right to retain the moneys in question. That it finished the works is not disputed. That it was liable to liquidate the unpaid claims against Rogers for material and labor is nominated in the bond it gave. When he abandoned the work the company took his place and having finished the undertakings it was entitled to settle its accounts and its liability under the contracts and bonds with the State of Oregon through its constitutional auditor, the Secretary of State. Under the provisions of Chapter 314, Laws 1913, that officer is required

"to examine and determine the claim of all persons, firms or corporations against the state, in cases where provisions for the payment thereof shall have been made by law, * * and to draw a warrant upon the treasury for the same"; *provided,* "that no claim be allowed and no warrant drawn until services have actually been rendered, or goods, wares, merchandise or other articles have actually been delivered to and received by the state or its duly authorized agent."

9–12. The very essence of the complaint and of the answer of the bank is that the company has collected money from the state on these contracts and that is conceded. When the company had finished the work and applied to the Secretary of State for settlement he had a right to inquire not only whether the surety had finished the work but also whether it had complied with the terms of its bond and had caused payment to be made to persons supplying its principal with labor and material for which they had not received compensation. It is presumed that official duty has been regularly performed. In the absence of any other showing, therefore, we must assume that the auditing officer of the state inquired and found that the labor and materials had been furnished and used in the construction of these several state buildings and that the surety perforce had paid for them. Under the pleadings, therefore, a *prima facie* case appears in favor of the company to the effect that it is rightly in possession of the money which it received in the settlement of its accounts with the state for lawfully it could not have obtained it otherwise. In addition to this the testimony of workmen actually engaged on the jobs shows that materials described in the bills rendered to the company by various tradesmen and laborers were actually employed in the construction of the buildings. The only attack upon this oral testimony is by way of cross-examination and the utmost shown thereby is that some of the witnesses who claim to have shipped materials to the contractor for the firms they represent could not say of their own knowledge that they actually saw the shipments delivered on the ground or that the identical material went into the construction of the buildings. This is only negative in value and does not impeach in any way the

*prima facie* case made on the pleadings that the Secretary of State ascertained in his official capacity that the materials and labor had been furnished and paid for by the company. It is true as pointed out in effect in such cases as *State* v. *Brown,* 10 Or. 215, *Shattuck* v. *Kincaid,* 31 Or. 379 (49 Pac. 758), and *Gibson* v. *Kay,* 68 Or. 589 (137 Pac. 864), and other like cases, that the decision of an auditing officer is only *prima facie* correct and that it may be disputed; but where, as in this instance, nothing appears to controvert the decision of the auditor it must control the decision of the issue presented. It is not enough to cast doubts upon the oral testimony by mere cross-examination. If the plaintiff and the bank would overturn the accounting had with the Secretary of State, supported as it is by competent testimony given at the hearing of this case, they must show that the account is erroneous and specify wherein it is at fault.

The conclusion of the whole matter is that by virtue of its relation of suretyship to the original contractor the company is entitled to precedence over the bank which occupies the position of a general creditor and the trustee in bankruptcy who takes only what Rogers would have taken had the different enterprises been carried forward to completion under his management; and further, that there is nothing here to dispute the *prima facie* correctness of the audit of the state's officer when it settled with the company.

The decree of the Circuit Court is reversed and the suit is dismissed with costs and disbursements in favor of the company and against the plaintiff and the bank.                REVERSED. SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

MR. JUSTICE HARRIS concurs in the result.