Argued June 4, motion to dismiss denied July 11, reversed September 30, 1924.

## SIDNEY SMYTH, ADMR., *v.* GEORGE W. BATES & CO., BANKERS.

(228 Pac. 931.)

**Bills and Notes—Bank's Application of Payment on Note Before Maturity Held not to have Released Indorser from Liability.**

1. Where plaintiff's decedent deposited stock and bonds with bank as security for loan, agreeing that, on default, security could be sold to satisfy the loan and any other debts he might owe the bank, and bank sold such securities and applied surplus proceeds to note on which plaintiff was indorser, but which had not matured, such application of payment did not release plaintiff from liability as indorser.

**Bills and Notes—To Release Indorser Change in Substance of Obligation must Injuriously Affect Him.**

2. To release an indorser from liability there must be a change in the substance of his obligation, so that he is or may be injuriously affected by it.

**Bills and Notes—Part Payment of Note Held not to Release Indorsers.**

3. Part payment of a note by the maker or even by a volunteer will not release the indorsers from liability.

**Bills and Notes—Payment on Note Before Maturity Held not to Make It New Contract Releasing Indorsers.**

4. Indorsing a payment on a note before maturity does not make it a new note or a new contract so as to release indorsers.

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

MOTION TO DISMISS DENIED.    REVERSED.

For appellant there was a brief over the name of *Messrs. Raffety & Pickett,* with an oral argument by *Mr. J. G. Arnold.*

For respondent there was a brief and oral argument by *Mr. Chester A. Sheppard.*

PER CURIAM.—This was an action for money had and received. The complaint alleges that the defendant, a banking company, received for the use and benefit of one Harry Howard $2,393.99 on August 14, 1915; $2,586.82 on July 7, 1916 (later found not to have been received by defendant), and $136.36 on October 25, 1918, which sums were received from the sale of certain bonds. Defendant's amended answer denies the allegations of plaintiff's complaint and as a further and separate answer and defense alleges: That Harry Howard had borrowed the sum of $2,075 from defendant, for which sum he had given defendant his note and, as security, placed 25 shares of stock in the Diamond Brick Company with defendant; that later a new note for the same amount was executed in lieu of the former note and the same security deposited, and that, in addition to this security, Howard deposited with defendant bonds of the Columbia Clay Company of the par value of $4,000, agreeing that in case of default in the payment of the note defendant might sell the stock and bonds and apply the proceeds to the payment of the obligation, and apply the surplus to the payment of any other obligations Howard might owe defendant; that one E. A. Hume had executed a note for $16,000, in favor of this defendant, which note was indorsed by Harry Howard and one C. J. Cook, and which later was reduced to $10,000, and a new note issued for the latter

amount, dated January 11, 1915, due one year from date, bearing the same indorsements; that the defendant collected the interest on Howard's stock and bonds, and the face value of one of the bonds at its maturity, and on August 14, 1915, sold the Columbia Clay Company bonds for $3,500, applying all such sums upon the balance due on the $2,075 note of Howard's, and the surplus on the unpaid $10,000 note upon which he was an indorser, and that there was an account stated on August 14, 1915.

Plaintiff's reply admits part of defendant's answer but denies that there was an account stated, and further denies that Howard made any payment upon the $10,000 note, or that he in any way authorized defendant to apply the sum of $2,393.99 and later the sum of $136.36 to the payment of said $10,000 note. A jury trial having been waived, the court made its findings of fact and conclusions of law, and rendered judgment in favor of plaintiff for the sum of $2,393.99 with interest and the sum of $136.36 with interest, and exonerated and discharged plaintiff from all liability on the $10,000 note made by R. A. Hume and indorsed by Howard and Cook. Defendant appeals.

Appellant contends that the hypothecation agreement, which was part of the $2,075 note made by Howard, gave sufficient authority to apply the balance, $2,393.99, received from the sale of Howard's collateral after paying his note to defendant to the payment of the $10,000 note upon which he was an indorser. Appellant urges that such authority was proven to have been given, and that no proof was given by respondent showing that there was no such authority. It is further contended that Howard waived demand, protest, and notice of nonpayment, and that appellant is entitled to set off the $10,000

against the claim of respondent, and that an account stated may be based upon the relation of a bank and its customer which is that of an ordinary debtor and creditor.

Respondent contends that there can be no account stated except between prime contractors, and that Howard was only secondarily liable, and that he was discharged as surety because the contract was altered.

Appellant, in its reply brief, further urges that a surety is primarily liable upon a promissory note and absolutely liable for its payment.

There are certain absolutely uncontradicted, if not admitted facts which render a discussion of all of the contentions of the parties unnecessary. These facts are: (1) That on January 11, 1915, R. A. Hume executed to the defendant his promissory note for $10,000, payable one year after date and indorsed by Harry Howard and C. J. Cook; said indorsers waiving demand, protest and notice of nonpayment; (2) That nothing was paid on the note unless the indorsement of $2,393.99, being the balance remaining after applying the proceeds of the sale of Columbia Clay Company bonds to the payment of Howard's other indebtedness; (3) That said application of $2,393.99 was made on August 14, 1915, and before the $10,000 note was due; (4) That a statement of the bank, showing the application of these funds was furnished Howard by the bank shortly after such application had been made, and there is no evidence that he objected thereto; (5) That Howard died in 1918; and (6) that there is no evidence that Howard in his lifetime ever demanded or attempted to check against or otherwise withdraw the sum of $2,393.99 which it is now claimed was in the bank subject to his credit.

1–4. Giving respondent the benefit of every inference that can be drawn against the positive testimony of appellant's witnesses to the contrary, and conceding for the purposes of this opinion that Howard never authorized the application of these sums to the payment of the Hume note, and holding, in view of such concession, that in the absence of such authorization such application of the disputed moneys was void, we cannot agree with counsel for respondent that such attempted application released Howard and Cook from their liability as indorsers. The act that releases an indorser in any case must be one that changes the substance of his obligation, so that he is, or may be, injuriously affected by it. A valid payment of the same sum of Hume or even by a volunteer would not have released the indorsers from liability, since it would have benefited, instead of injuring; much less an invalid credit of payment.

The authorities cited by counsel for respondent go mainly to the proposition that any change in a contract, however slight, which in effect creates a new contract different from that which the surety contemplated when he became such, releases him from liability. Indorsing a payment upon a promissory note before maturity does not make it a new note or a new contract: *Woodle* v. *Settlemyer,* 71 Or. 25 (141 Pac. 205, Ann. Cas. 1916C, 1222, L. R. A. 1915A, 839), cited by respondent, is not in point. It discusses generally the liability of sureties upon appeal bonds, and holds that the courts cannot by construction extend the liabilities of sureties beyond the terms stated in the undertaking. Neither has *Wehrung* v. *Denham,* 42 Or. 386 (71 Pac. 133), any legal application to this case. In that case the plaintiff, the state board of agriculture, contracted with Denham to erect a cer-

tain building upon the state fair grounds; for the performance of which contract Denham gave a bond with two sureties. Denham failed to complete the work and he and the sureties were sued upon the undertaking. The sureties defended upon the ground that the contract with Denham required payments to be made in certain proportions as the work progressed; the board to hold the remainder for a certain period after completion of the work, which was not done. The court said:

"As to the surety, however, a different rule obtains. In such a case it does not seem to us that the doctrine that the surety may stand upon the strict letter of his contract has exact application. If what has been done by the obligee could not by any possibility have materially varied or enlarged the liability of the surety, it is difficult to see how it could discharge him. * * In a case like the present, where the payments are required to be made in certain proportions as the work progresses, the balance remaining in the hands of the principal for a stated period after the completion of the work, it is fair to assume that the provision is for the benefit of the surety, as he might not have obligated himself if it had been otherwise. * *

"And, wherever it is manifest that the security intended to be reserved for the benefit of the surety has become impaired by what has been done by the obligee in the nonobservance of his undertaking, or which might by possibility materially vary or enlarge the surety's liabilities, it will operate to the latter's absolute discharge. The obligee owes a duty to the surety as well as to the other contracting party, and is bound to respect his rights in his dealings under the contract, and if he fails in this, to the surety's possible injury in a material respect, he absolves the latter from his obligation. * * *"

*Wood* v. *Steele*, 6 Wall. (U. S.) 80 (18 L. Ed. 725, see, also, Rose's U. S. Notes), was a case in which a

note was made by Steele and Newson and indorsed to Wood. The note was dated September 11th, and before it was negotiated to Wood, Newson, without the knowledge or consent of Steele, changed the date from September 11th to October 11th. It was held that such alteration was material, and that there could be no recovery against Steele, he being merely a surety and not receiving any part of the money. The distinction between the conditions in that case and the one at bar is apparent.

If the credit in this case had been authorized it would not have changed the liability of Howard as indorser; if unauthorized it was a void act which did not and could not operate to release him, and at his death he had a credit of $136.36 and $2,393.99 in the bank and was liable for the amount due on the $10,000 note. This being the state of the case, the amount due upon the $10,000 note may legally be set off against his alleged credits in the bank: 24 C. J., p. 757, § 1871, and cases there cited; Waterman on Set-Off (2 ed.), p. 23, § 21; *Fishburne* v. *Merchants Bank,* 42 Wash. 473 (85 Pac. 38, 7 Ann. Cas. 848); *Ainsworth* v. *Bank of California,* 119 Cal. 470 (51 Pac. 952, 63 Am. St. Rep. 135, 39 L. R. A. 686). Upon facts, therefore, which are incapable of contradiction, the respondent could not recover under any circumstances.

The judgment will therefore be reversed and the case dismissed.

MOTION TO DISMISS DENIED. REVERSED AND DISMISSED.