218 F.2d 645
 PHOENIX INDEMNITY COMPANY, a corporation, Appellant,
v.
Hugh H. EARLE, Collector of Internal Revenue, and Ross H. Coppock, Trustee in Bankruptcy of the Estate of Alan A. Siewert, Bankrupt, Appellee.
 No. 13755.
 United States Court of Appeals Ninth Circuit.
 January 14, 1955.
 
 Rhoten, Rhoten & Speerstra, George A. Rhoten, Salem, Or., for appellant.
 H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, John J. Kelly, Jr., Sp. Assts. to Atty. Gen., Elmer Kelsey, Atty., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Eugene, Or., Maurice V. Engelgau, Asst. U. S. Atty., Coquille, Or., Bryan Goodenough, Salem, Or., for appellee.
 Before HEALY and BONE, Circuit Judges and DRIVER, District Judge.
 BONE, Circuit Judge.
 
 
 1
 Alan Siewert, a self-employed contractor, was adjudicated a bankrupt by the lower court on July 7, 1951, and on the same day the proceeding was referred to a referee in bankruptcy. On August 4, 1951, the Collector of Internal Revenue for the District of Oregon filed a claim of the United States asserting a tax against the bankrupt and his assets in the hands of the trustee with the Referee in Bankruptcy, this claim being for $12,770.28. Later, two supplemental claims for taxes due were filed with the Referee, one on January 17, 1952 and the other on June 21, 1952. These two subsequent claims totaled $684.20.
 
 
 2
 Phoenix filed petitions with the Referee on April 18, 1952, and on August 4, 1952, asserting claims against the assets in the hands of the Referee. The allowance of all of these claims was opposed by the United States.
 
 
 3
 Upon hearing and under date of November 22, 1952, the Referee entered his findings, opinion and order holding that the sum of $11,838.61 received from the Bonneville Power Administration, herein Bonneville, came into the hands of the trustee impressed with certain tax liens (later noted) of the United States, and that this sum (less costs and expenses of administration as determined by the court) should be paid to the Director of Internal Revenue.
 
 
 4
 The order of the Referee was later reviewed by the lower court on petition therefor by appellant Phoenix, and the Referee's order was, without opinion, affirmed by the court for the reason set forth in the Referee's findings, opinion and order. This appeal followed. As we later note, the basic question here is whether, under the facts[1] and the law, the Government's tax liens asserted against the funds in the hands of the trustee in bankruptcy are superior to the claim of appellant Phoenix.
 
 The Facts
 
 5
 Since the basic facts are of controlling significance, the chronology of events becomes important. The order of the Referee was based on the records before him which established to his satisfaction facts set forth in his findings, opinion and order which we summarize below. We find no reason in the record to disagree with the Referee's appraisal of the facts.
 
 
 6
 Siewert entered into a contract with Bonneville, the Government agency here involved, to construct an entrance road and parking area at a Bonneville substation in Oregon. At the same time Phoenix executed and delivered a performance bond and a payment bond in favor of the United States as required of contractors by federal law in situations of the character before us. In Siewert's application to Phoenix for these bonds he agreed to indemnify this surety against all loss sustained by reason of the execution of the bonds, and assigned to Phoenix, as collateral, to secure the obligations contained in the application and any other indebtedness or liability of his to the surety,[2] such assignment to become effective as of the date of the contract bonds, but only in the event of (1) breach of the contract or of the bonds; or (2) any breach of the agreements contained in his application; or (3) of a default in discharging other indebtedness or liabilities when due; or (4) of any assignment for the benefit of creditors or of the appointment of a receiver or trustee for Siewert, any and all percentages retained (by Bonneville) on account of said contract, and any and all sums that may be due under said contract at the time of abandonment (of the contract work), forfeiture or breach, or that thereafter may become due.
 
 
 7
 In the spring of 1951, Siewert experienced some financial difficulties and for a time funds paid by Bonneville on the Siewert contract were deposited with a bank in a special account from which disbursements were made (by Siewert and Phoenix) only for labor and material employed in performance of the Bonneville contract. The Referee found that Siewert did not default in performing his contract; that his work was completed on June 19, 1951 and it was forthwith inspected and accepted by Bonneville as satisfactory.
 
 
 8
 Subsequently, Phoenix, under its payment bond paid claims totalling $15,210.60 for labor and material furnished to Siewert in the performance of his contract.
 
 
 9
 Prior to Siewert's bankruptcy and prior to any payments made by Phoenix in compliance with the requirements of its payment bond, three separate notices of tax liens were filed by the United States against Siewert in Marion County, Oregon, (his place of residence and of doing business). These lien notices were filed on June 29, 1951, June 15, 1951, and May 24, 1951, and the three lien claims totalled $12,486.00. On July 29, 1951, the Collector of Internal Revenue filed in the bankruptcy proceeding a proof of claim containing the items included in the above (three) liens; the total of the Collector's claim, with penalties and interest to August 1, 1951, amounted to $12,770.28.
 
 
 10
 Later, and on January 17, 1952, the Collector filed a supplemental proof of claim covering withholding and employment taxes for the June, 1951 quarter in the sum of $323.15, and the brief of the Government in the Referee's court indicated that a notice of lien for this amount had been filed in said Marion County, Oregon on January 3, 1952.
 
 
 11
 The total amount paid to Siewert's creditors by Phoenix under the payment bond amounted to $15,210.60.
 
 
 12
 On or about January 18, 1952 Bonneville delivered to the trustee a check for $11,838.61 this amount being the balance due to Siewert on his contract, including the amount of retained percentages of progress payments made prior to completion date of the contract.
 
 The Claims of the Parties
 
 13
 The claims of the parties, asserted here and before the Referee and lower court, are brief and appear to concern only questions of law arising out of the agreed facts.
 
 
 14
 Appellee contends that the above noted tax liens of the Government are superior to the claim of appellant.
 
 
 15
 Appellant poses the problem here in two questions: First, does Phoenix have subrogation rights under the circumstances surrounding its claim; and second, did the lower court err in sustaining the above noted contention of the Government.
 
 
 16
 In the posture of the case, as above outlined, the question here for decision boils down to appellant's challenge to the validity of the Referee's conclusion and holding that the sum of $11,836.61 received by the trustee from Bonneville should be paid over to the Director of Internal Revenue by reason of the Government's prior lien for the aforesaid taxes due it. Or, in other words, is this lien for unpaid taxes superior to and entitled to priority over the claim of Phoenix?
 
 
 17
 Appellee contends that the decisions of the Supreme Court in Goggin v. Division of Labor Law Enforcement of Cal., 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543; United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; and our decision in In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979, require an affirmative answer to the question just above noted.
 
 
 18
 Appellant makes the following assignment of errors:
 
 
 19
 "First: That the referee and the District Court erred in determining that the doctrine of subrogation does not apply in favor of Phoenix Indemnity Company under the circumstances surrounding its claim; and
 
 
 20
 "Second: The referee and the District Court erred in holding that the tax claim of the United States is superior to the rights of Phoenix Indemnity Company."
 
 
 21
 In its brief the appellant based its right of subrogation upon its payments to labor and materialmen. In oral argument appellant expressly abandoned any claim of subrogation based upon materialmen's claims[3] and appears to have no further claim of subrogation other than a passing remark in oral argument, that although it abandoned its right to be subrogated to materialmen it did not give up any right to be subrogated to the rights of the Government. No prior nor further reference was made to such a right of subrogation to the Government's position, nor was any explanation or authority offered for such a claim during oral argument or in the brief.
 
 
 22
 Such an assertion would seem to have been laid to rest in United States v. Munsey Trust Co., supra, from which the Referee quoted extensively in his "Discussion of Law" in "Referee's Findings, Opinion and Order" which were adopted in their entirety by the district court. After Justice Jackson established in the Munsey case that the United States was a secured creditor he said at page 241 of 332 U.S., at page 1602 of 67 S.Ct.:
 
 
 23
 "But the infirmity in respondent's case goes deeper. If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation. [Citations.] They cannot acquire a lien on public buildings, [citations] and as a substitute for that more customary protection, the various statutes were passed which require that a surety quarantee their payment. Of these, the last and the one now in force is the Miller Act [40 U.S. C.A. § 270a et seq.] under which the bonds here were drawn."
 
 
 24
 As to appellant's claim of assignment by way of the bond application and its subrogation to the claims of labor and materialmen the Referee said in his "Discussion of Law":
 
 
 25
 "The assignment was made as collateral to secure the indemnity agreements of Siewert [bankrupt]. No attempt was made to comply with requirements of Title 31 U.S. C.A., Section 203 relating to assignments of claims against the United States. It was, therefore, void as to the United States * * *"
 
 
 26
 "It is conceded that Phoenix is subrogated to the rights of the creditors whose claims it paid. This right is fortified by the assignment of these claims by the creditors to the surety. But these creditors had no lien or other enforceable right against Bonneville or the funds owing to Siewert. Hence, their claims against the estate of the bankrupt are general and unsecured. In this case no funds will be available for general creditors after the payment of expenses of administration, tax liens and other priority tax claims."
 
 
 27
 In oral argument appellant based its claim upon an asserted "right to an equitable lien." There is no reference to an "equitable lien" in the record before us from the district court (which includes the claims and memorandums presented to the Referee); there is no assignment of error by appellant dealing with an "equitable lien," and an "equitable lien" is not mentioned in the briefs.
 
 
 28
 It may well be that no case remains for our consideration. Rule 18, subd. 2(d) of the Rules of this Court says in part: "in all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. * * * In all cases, when findings are specified as error, the specification shall state as particularly as may be wherein the findings of fact and conclusions of law are alleged to be erroneous."
 
 
 29
 This is an appeal from an affirmation of the lower court of the findings and conclusions made by the Referee in Bankruptcy. But, appellant cites no cases and no authority dealing with bankruptcy other than merely providing us with the citation of one 1917 case, Derby v. United States Fidelity & Guaranty Co., 87 Or. 34, 169 P. 500 which was concerned with a dispute between a bank and an insurance company. Appellant provided this Court with only one sentence which was in any way concerned with the statutory provisions of the Bankruptcy Act:
 
 
 30
 "The bankruptcy act provides that taxes due the United States are entitled to the priority there expressed. U.S.C.A. Title 11, section 104."
 
 
 31
 This sentence appears to support appellee and not appellant.
 
 
 32
 Appellant's position in this bankruptcy proceeding would appear to be fixed and limited by Section 57, sub. i, of the Act, 11 U.S.C.A. § 93, sub. i, which permits a surety to be subrogated to the rights of creditors to the extent that he pays the creditors. This section and its effect are the subject of a full discussion in Collier on Bankruptcy, Vol. 3 (14th ed.) commencing at page 284 and continuing to page 296. Beginning on page 287 it is stated:
 
 
 33
 "The surety normally has against the principal a claim, express or implied, absolute or contingent, to be indemnified or reimbursed. Without § 57i there could be no doubt but that such a claim is provable by the surety in the same manner any other claim provable under § 63a [11 U.S.C.A. § 103, sub. a] may be presented, namely as the surety's own claim against the bankrupt principal debtor. Section 57i flatly denies this right. It confines the secondary debtor to a proof of the creditor's claim, in the creditor's name. `A creditor may indeed prove against both principal and surety, but that is because he has two separate claims, really he has security upon a single claim. But there can never be more than one claim against the principal.' It is this one claim, namely the creditor's claim, that the surety may prove prior to or after subrogation, and not his own claim upon an agreement, express or implied, of indemnity."
 
 
 34
 Under the Bankruptcy Act it appears that a surety is limited to a right of subrogation to the position of the creditors of the debtor to the extent that the surety pays the creditors. The best position of any of the creditors paid by Phoenix Indemnity Company to which it might be subrogated (although we understand this claim to be abandoned) was a right to priority by § 64 of the Act. The government is the holder of valid, perfected tax liens. Such a lien claimant has a position in bankruptcy superior to priority claimants whose claims are unsupported by perfected liens.
 
 
 35
 Section 57, sub. i appears to clearly support the conclusions of the Referee which were sustained by the affirming order of the lower court.
 
 
 36
 Judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 In argument here, we were advised that there is no dispute as to the facts. The Referee's findings, opinion and order clearly and succinctly state the controlling facts on which his order was based and we resort to it for our summary of the facts
 
 
 [2]
 This assignment was sweeping in character. It covered and included, inter alia, all rights of the assignor in all subcontracts and in the main contract, materials purchased for or chargeable to the contract, causes of action, claims and demands accrued or accruing in favor of the assignor arising out of the contract, and the assignor's rights and interest in all of the machinery, tools, equipment, plant and materials about the site of the work
 
 
 [3]
 From the rest of the discussion we gathered that appellant also intended to abandoned its claim of subrogation to laborers' claims. But in any event, and as we later note, the rule seems to be that perfected "liens" take preference over a "priority" claim unsupported by a lien